[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. HISTORY
On May 12, 1983, the petitioner, Donald Utz, was convicted of the crimes of murder, attempted murder and weapon in a motor vehicle. The Connecticut Supreme Court upheld his conviction in State v. Utz, 201 Conn. 190
(1986). The petitioner was since then filed multiple habeas corpus actions and a petition for a new trial. He has filed the habeas corpus petitions on the state and the federal level. On October 24, 1983, he filed in Connecticut Superior Court a petition for a new trial which, after hearings held on February 13 and March 25, 1986, Judge Lavery denied on March 25, 1986. The instant petition for a writ of habeas corpus dated January 3, 1986 and bearing Docket No. 10 78 21 alleges constitutional violations prior to and during the hearing of the petition for a new trial. CT Page 3664
The instant petition for a writ of habeas corpus filed by the petitioner on July 30, 1986 and bearing Docket No. 10 78 17 alleges constitutional violations, post-hearing to appeal from the denial of that petition for a new trial. The habeas court heard the witnesses, reviewed the exhibits, reviewed the transcripts of the proceedings and read the briefs before tendering this decision.
II. ANALYSIS
A petition for a new trial in Connecticut is a civil action separate from and collateral to the criminal case. State v. Asherman, 180 Conn. 141 (1984). Connecticut General Statutes, Sec. 54-95 creates the ability of a defendant in a criminal prosecution to seek relief from a decision of the Superior Court by petition for a new trial, "in the same manner and with the same effect as in civil actions." See Connecticut General Statutes, Sec. 54-95 (a). One must then refer to Connecticut General Statutes, Sec.52-270 for the Connecticut civil procedure. Section 52-270
provides that a new trial may be granted for among other reasons the discovery of new evidence.
A petition for new trial cannot be granted except on "substantial grounds." State v. Grimes, 154 Conn. 314, 325
(1966). The petitioner in Grimes appealed from the denial of his petition for a new trial. The Connecticut Supreme Court reiterated that the petitioner bears the burden of alleging and proving facts which would entitle him to a new trial. Where a petition is based on newly discovered evidence, as was the petitioner's in the instant case, "that evidence must, in fact, be newly discovered and such that it could not have been discovered and produced at the former trial by the exercise of proper diligence." Id.
Further, the plaintiff-petitioner must prove that "the evidence was in fact newly discovered; that it would be material to the issue on a new trial; that it could not have been discovered and produced on the former trial by the exercise of due diligence; that it is not merely cumulative; and that it is likely to produce a different result in a new trial." See Reilly v. State, 32 Conn. Sup. 349, 354
(1976); citing Pass v. Pass, 152 Conn. 508, 511.
The petitioner's claim that he has been denied the effective assistance of counsel in the petition for a new trial is without merit for it does not apply here. Even under state statutory law, the petitioner was not entitled as of right to the services of an attorney because of his CT Page 3665 indigency during the civil, collateral action which he constituted. Section 51-296 of the Connecticut General Statutes sets out the types of proceedings in which an indigent defendant is entitled to the services of a public defender. If the court determines that a defendant is indigent, it must appoint counsel to represent him in (a) any criminal action; (b) any habeas corpus proceeding arising from a criminal matter; (c) any extradition proceedings; or (d) any delinquency matter. The list of proceedings in which an indigent defendant is entitled to court appointed counsel is exhaustive. Neither the statutes nor Connecticut case laws suggest that an indigent defendant is entitled to court appointed counsel in proceeding other than those listed. It is clear that a petition for a new trial is not one of the enumerated proceedings. This court cannot find that the petitioner was entitled to the effective assistance of counsel when he is not even entitled to the appointment of counsel.
Due process and equal protection require that an indigent defendant be afforded appointed appellate counsel when state law allows a first appeal as of right. In Douglas v. California, 372 U.S. 353, 355-57 (1963), the Supreme Court held that although appellate review is not required by the constitution, when the state does provide for a first appeal as of right, it cannot discriminate against the indigent defendant. Id. at 355. Furthermore, the United States Supreme Court has held that due process and equal protection require the effective assistance of counsel during first appeal as of right. Evitts v. Lucey, 469 U.S. 387, (1985).
However, as far back as 1974 in Ross v. Moffett,417 U.S. 600, (1974), the Supreme Court concluded that this right to appellate counsel does not extend to mandatory or discretionary review beyond the first appeal as of right. I But even more to the point for purpose of these petitions, the United States Supreme Court in Pennsylvania v. Finley,95 L.Ed.2d 539 (1987), a murder case with a life sentence, reiterated there is no constitutional right to an attorney on collateral attack after conviction and first right of appeal. In the instant case, Utz was provided counsel at trial and on the appeal. The court in Finley reached this conclusion in I the context of deciding whether there was ineffective assistance of court appointed counsel in a state post-conviction collateral proceeding. The decision leaves no doubt that the level of effectiveness of post-conviction court appointed counsel in collateral proceedings instituted by the defendant with a public defender or private attorney, is constitutionally meaningless as there is no CT Page 3666 constitutional right to counsel in such proceedings under either the due process or equal protection clauses or thesixth amendment to the United States Constitution. Thus, even where the state chooses to supply a public defender to an indigent, after trial and first right of appeal as Judge Lavery did here, the petitioner cannot hold the state through such attorney to these constitutional standards and thereby void his conviction by instituting collateral attack, after collateral attack until eventually prejudicial ineffectiveness occurs. The Finley court refused to accept the premise that "when a state chooses to offer help to those seeking relief from convictions, the federal constitution dictates the exact form such assistance much assume." Id. at 548. Instead, the United States Supreme Court left to the state's discretion the development and implementation of programs to assist prisoners in securing post-conviction review. Connecticut has chosen to give Superior Court judges the discretion to grant a new trial for a variety of reasons. See Connecticut General Statutes, Sec. 52-270. Connecticut has also chosen, however, not to provide court appointed 3 counsel to an indigent convicted prisoner should he choose to avail himself of the strictly civil procedure of petitioning for a new trial. This is clear because as the petitioner acknowledged November 9, 1990 at the trial at page 70 and 71, the statute delineating the situations in which an indigent I defendant is entitled to a public defender does not include civil petitions for a new trial. See Connecticut General Statutes, Sec. 51-296. Some civil proceedings have created rights for counsel for indigents such as a habeas corpus arising from a criminal matter, a civil contempt where incarceration may follow, paternity actions, and the like.
When an attorney representing a party in a civil proceeding allegedly errs, that party's remedy is to bring a civil suit alleging malpractice. Obviously, that remedy is available to the petitioner. The instant civil actions against the respondent warden are certainly inappropriate. There are no such statute or practice book provisions creating the right to counsel in an indigent petitioner's post-conviction collateral petition for a new trial.
Even if this court could find that the petitioner was entitled to the effective assistance of counsel, the petitioner has not established that either Attorney DeLuca's preparation for the hearing fell below the objective standard of reasonableness required of trial counsel or that but for counsel's conduct the outcome of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668
(1984). Thus, this court cannot find that the petitioner was denied the effective assistance of counsel. CT Page 3667
There is no appeal as a right from the denial of such a petition. Judge Lavery denied that petition on March 25, 1986. Section 54-95 (a) of the Connecticut General Statutes clearly limits a petitioner's ability to appeal the situations in which there is a question involved in the decision which should be reviewed by the Connecticut Appellate or Supreme Court. There must be a judicial certification of the existence of such a question. Absent that certification, the Appellate Court lacks jurisdiction to hear the appeal. Gibbs v. Mase, 11 Conn. App. 289, 290-291
n. 1 (1987). Moreover, that certification must be made within ten days after judgment is rendered. Since the time limit is a "legislatively created condition precedent" to the jurisdiction of the Appellate Court, the existence and extent of that jurisdiction should be strictly limited to that time. Id.
Thus, it is obvious that a petition for a new trial, the denial of that motion, and the court's wholly discretionary review of that denial, in no way implicates any right to appeal much less a right protected by either the Connecticut or the United States Constitution. Accordingly, it is clear that the petition should be dismissed as it relates to a claim for a reversal of the applicant's conviction and a discharge from custody.
In Gaines v. Manson, 194 Conn. 510, 515, the court reversed where it found that the petitioners were entitled to a review to determine whether they were entitled to a remedy other than reversal of their convictions and discharge from custody. In that case, the petitioners drew the court's attention to the fact that in addition to the claim for 3 immediate release, there was a claim for "such other and further relief as justice requires." In addition, they called the court's attention to order whatever relief "law and justice require." The court said on page 519, "In these circumstances, we agree with the petitioners that the violations of their rights of due process and equal protection must be considered in light of remedial alternatives other than immediate discharge. While the trial court was correct in its conclusion that the petitioners have not proven their claims for immediate and unconditional release, that conclusion does not counsel dismissal of the pet it ions for habeas corpus if the petitioners can establish a right to such other forms of relief as `law and justice require.'"
In the instant case, it is clear, however, that the plaintiff specifically indicates that there is no other CT Page 3668 possible remedy in this matter and clearly states in the brief that he is looking for three forms of relief: (1) release from custody; (2) a new trial; or (3) a new hearing on the petition for the new trial. All three of those have been considered by this court and are rejected. This is specifically so in light of the language in the petitions where the petitioner stated that he requested that his conviction be overturned, that he be immediately released, or I alternatively that his conviction be overturned and he be granted a new trial with reasonable bond. The court has reviewed the three claims for relief of the plaintiff and finds that the release from custody and the new trial would involve constitutionally protected rights and for all of the foregoing reasons, this is not a constitutionally protected right situation. As it relates to a new hearing on the petition for a new trial, that is denied for all of the reasons hereinbefore set forth.
The court in attempting to explore a mechanism to assist the applicant under the Gaines theory finds that the appellant has closed down two areas, one of which is the right to appeal since in their brief beginning at page 4 and running through page 5, they explain how the right to appeal may not be further extended. Pages 6 through 10 indicate that the alternatives suggested by Attorney Joette Katz in Exhibit H at trial is no longer viable. Accordingly, the court, based on the applicant's statements in the brief, rejects that as a proposition.
It is clear that a state has the power to deliver inadequate legal services to indigents pursuing collateral attacks upon their convictions. Pennsylvania v. Finley, supra, 539. This may be difficult for the plaintiff to understand but this is the law.
As a final matter, the court will address the disqualification issue that has been raised at trial in third amended petition in case No. 10 78 20 but briefed in these cases. Other issues in this case were not briefed by the plaintiff and are considered abandoned. State v. Ramsundar, 204 Conn. 4, 16 (1987). As far as the question of disqualification of Judge Lavery, it is clear that the factual basis for the petitioner's allegation is the I stipulation dated October 10, 1990, entered into by the parties in the instant matter. There is no question that the facts agreed to in the stipulation do not constitute grounds for recusal. The Connecticut Code of Judicial Conduct provides that a judge should only disqualify himself where his impartiality might reasonably be questioned. Cannon 3 (c)(1). Where a lawyer with whom the judge previously CT Page 3669 practiced law served "during such association as a lawyer concerning the matter," appears before him, the judge should disqualify himself. Id. at (b). (Emphasis added.)
However, the instant case clearly does not fall within the prohibition of the Code of Judicial Conduct since the state's attorney did not serve in any capacity with respect to the petitioner's case during his association with the trial judge. Further, the relevant Connecticut statute requiring that a judge disqualify himself because of a relationship between himself and a "party," Connecticut General Statutes, Sec. 51-39 does not even address the prior professional relationship of a judge and counsel for a party.
A judge is not precluded from presiding over a criminal case merely because the state's attorney and the judge were formerly associated. State v. Cappello, 6 CLT No. 4, p. 12 (1980). In Cappello, the defendant appealed from his conviction after a jury trial. The issue in Cappello, was whether the trial judge should have disclosed to the defendant a former employer/employee relationship between himself and the prosecutor so that a motion for disqualification could have been made. Id. The defendant in Cappello acted as his own counsel at trial and was unaware of any prior relationship between the judge and the prosecutor. Approximately one year before the trial, the judge in Cappello had employed the state's attorney in his private practice. When the relationship terminated, neither had any further interest in the former practice. The Appellate Court, Shea, J. J. relying or the town of East Haven v. Eastern Airlines, 293 F. Sup. 184, 189. (Dist. of Conn. 1968) and the ABA Standards, The Functions of the Trial Judge, section 1. 7 stated: "A judge is under a duty not to disqualify himself upon insufficient grounds." Since even a former partnership between judge and counsel is `almost never' a ground for disqualification, Frank, Disqualification of Judges, 56 Yale Law Journal, 630-631, the court stated that the employer/employee relationship would be an even weaker basis for disqualification. "Indeed, in the entire literature on disqualification, some 2500 cases in 60 articles, not a single instance has been found in which it is suggested that ex-partnership, by itself, should be a ground for disqualification." Id. at 631.
In the instant case, the petitioner was also found guilty after a jury trial. Judge Lavery's professional association with the prosecutor had terminated in July, 1973 over a decade before the petitioner's matter came to trial. Clearly, neither the judge nor the prosecutor had any interest in the petitioner's case during their association. CT Page 3670 Nor did either retain any interest in their former practice, each having been appointed to their present positions. Trial counsel testified, Transcript, November 16, 1990 at p. 31, that he did not know at the time of the trial that the prosecutor and the judge had a prior professional relationship. Even if he had known and had moved for disqualification, however, the trial judge would have had insufficient grounds on which to disqualify himself Therefore, the petitioner has not demonstrated, nor can he, that the trial counsel's failure to make a motion for disqualification constituted conduct below the objective standard of reasonableness required of attorneys. There is no indication, furthermore, that the trial judge failed to approach the matter in the utmost spirit of fairness. In conclusion, this court cannot find that there is a reasonable probability that, but for trial counsel's failure to make a motion for disqualification, the outcome of the proceedings would have been different.
For all the foregoing, the petitions are dismissed.
Karazin, J.