[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR A PREJUDGMENT REMEDY AND APPLICATION TO DISCHARGE OR REDUCE BOND
The dispute between the parties arises out of a construction project in Trumbull, Connecticut known as the Bridle Trails Estates. The action consists of a several count complaint filed by Arganese Properties, LLC ("Arganese") against Salce Associates, Inc. ("Salce"), Bridle Trails Estates, LLC ("Bridle Trails") and United States Fidelity and Guaranty Company ("USFG"). The action also involves a complaint against Salce and Bridle Trails, as principals, and USFG as surety on a bond that has been posted in substitution of a mechanic's lien under Docket Number CV01 0379756S. The actions before the court involve an application for a CT Page 7962 prejudgment remedy made by Arganese against Salce and Bridle Trails seeking a prejudgment remedy and a motion by Bridle Trails asking the court to declare the bond to be discharged or reduced in amount.
In 1999, Mr. Gene Arganese ("Mr. Arganese"), the managing member of Arganese, discussed with Mr. Anthony Salce, Jr. ("Mr. Salce"), the president of Salce and a managing partner of Bridle Trails, the construction of a 52 unit affordable housing development in Trumbull, Connecticut to be known as Bridle Trails Estates. Salce was to be the general contractor and Arganese was to be the builder of units constructed on property owned by Bridle Trails. The parties eventually executed a document concerning the prices for the different units to be constructed. The document is entitled "Non-binding letter of intent and cost analysis" ("letter of intent"). The letter of intent envisioned the execution of a contract between the parties and indeed a draft contract was prepared and various revisions made and discussed between the parties. However, no formal contract was ever executed.
In February of 2000, Arganese at the request of Salce began construction of various units proceeding under the costs set forth in the letter of intent. On September 1, 2000, Salce terminated the services of Arganese for claimed lack of performance in the construction project. Arganese asserts that the termination was wrongful and constituted a breach of the agreement between the parties. The plaintiff Arganese asserts claims for breach of contract, promissory estoppel, quantum merit and unjust enrichment and asserts its right to a prejudgment remedy as well as the maintenance of the bond substituted for the mechanics lien without reduction in amount.
The standard by which the evidence in an application for a prejudgment remedy "is to be tested is not the same as that which governs a trial on the merits. In order to obtain a prejudgment remedy, an applicant need only show probable validity of his cause of action." William K. Raveisand Assoc. v. Kimball, 186 Conn. 329, 332 (1982). "The language" of our prejudgment remedy statutes . . . requires that the court determine whether or not there is probable cause to sustain the validity of the plaintiff's claim . . . that is to say probable cause that judgment will be rendered in the matter in favor of the plaintiff . . . The legal idea of probable cause is a bonafide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary prudence caution and judgment, under the circumstances, in entertaining it . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false . . . the hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish CT Page 7963 that he will prevail, only that there is probable cause to sustain the validity of the claim. 3S Development Co. v. Santore, 193 Conn. 174, 175
(1984) (internal quotation marks and citations omitted).
"The imposition of a mechanics lien for the furnishing of materials or services is provided for in General Statutes § 49-33. In an application to discharge or reduce that lien, the lienor is required to establish that there is probable cause to sustain the validity of the lien and, the burden of proof with respect to the discharge or reduction of that lien is by clear and convincing evidence. General Statutes §49-35b. "Szymborski, et al v. The Phoenix Group, et al, 1993 Conn. Super. Lexis 1946 (Rush, J.).
The claims for damages by Arganese involve (1) monies owed for work that was performed; (2) loss of profit on the work performed by Arganese on the 17 houses that were in the process of construction at the time of termination as well as loss of profit for the entire 52 units referred to in the letter of intent; (3) attorneys fees; (4) interest.
The claim for damages against Bridle Trails is based upon a statement by the plaintiffs that when Mr. Salce asked Arganese to begin construction he was doing so on behalf of Salce as well as his capacity as a managing member of Bridle Trails. However, aside from the claims relating to the mechanics lien which exists by operation of law, the evidence is insufficient to establish any contractual arrangement between Bridle Trails and Arganese. The letter of intent as well as the drafts of the full fledged contract that was never executed do not envision a contract with Bridle Trails. Accordingly, the court declines to grant a prejudgment remedy with respect to Bridle Trails. With respect to the claims for loss of profits on the 52 unit project there was certainly no contract between the parties obligating Salce to utilize Arganese for the entire project although there is no doubt that such a result was envisioned when the contractual arrangement were discussed. However, based upon the letter of intent the court cannot conclude that there was an agreement and obligation requiring Salce to utilize Arganese for all 52 units, nor was there a corresponding obligation upon Arganese to construct all 52 units. However, with respect to the 17 units that were in the process of construction at the time of termination the court believes that loss of profits is appropriate for those units. In respect to the loss of profit claim, loss of profit is not "material furnished or services rendered" under the bond or under the mechanic lien for which it was substituted. Brinn v. Mestie, 89 Conn. 107, 110 (1915), "Szymborski,et al v. The Phoenix Group, et al, supra; see Nickel Mine Brook v.Sakal, 217 Conn. 367 (1991). With respect to the claims regarding attorneys fees, the court will not consider attorneys fees with respect to the underlying contractual dispute as the attorneys fees are only CT Page 7964 recoverable with respect to the mechanics lien or to the bond in substitution therefore. Original Grasso Construction v. Shepard, 2001 Conn. Super. Lexis 608 (CV98 0350662S, 3/21/01, Mottolese, J.); DarienAsphalt Paving v. Giordano, 1999 Conn. Super. Lexis 845 (CV90 0107529, Lewis, J.). With respect to bond filed in substitution for the mechanics lien, the court finds that there is probable cause to sustain the validity of the lien in accordance with the following calculations as claimed by Arganese:
 CLAIM SUMMARY OF ARGANESE PROPERTIES — 5/25/01 $1,114,401.03 Work completed by Arganese Properties as of termination by Defendant.
 3,900.00 Roofing for Lot 18 (see Ex. 15 @ Lot 18, line 45; Ex. U, invoices paid to ABC Supply and Mario Martinez for roofing of Lot 18)
 7,250.00 Siding for Lot 21 (see Ex. 15 @ Lot 21, lines 44 and 46; Ex. U, invoice paid to Joe Vano for siding of Lot 21)
 965.00 Stairs for Lot 20 (see Ex. 15 @ Lot 20, line 23, 46; Ex. U, invoice paid to New England Stair for Lot 20)
34,734.58 Change orders
14,849.54 Materials retained at site by Salce
2,400.00 Shop Drawings
15,898.32 Building permits (12 paid for by Arganese)
13,058.33 Extras on 17 units where work was done by Arganese
 10,574.75 Fracker Plumbing Credit _____________ $1,218,031.55 Subtotal
 (773,069.60) Less: Payments made by Salce to Arganese _____________ $444,961.95 Subtotal due to Arganese for construction work completed as of 9/1/00
(197,479.22) Less: Payments made by Defendants after 9/1/00 to subcontractors for work completed as of 9/1/01 (see Ex. U and Ex. V, Schedule E; $198,975.78 credit claimed by CT Page 7965 Defendants, less ABC Supply invoice dated after 9/1 ($186.56), incorrect amount for Mario Martinez (invoice was $1,400 but payment was only $1,200), and incorrect amount for Spath Bjorklund (credit of $1,110 was claimed for plans for Lots 38 and 45 never invoiced to Defendants)). _____________ $247,482.73 Amount to be secured by existing bond.
To the sum of $247,482.73, the court will add interest (25%) of $61,870.68 and attorneys fees of $50,000.00 resulting in $359,353.41 to be secured under the bond. The existing bond is in the amount of $500,000.00 dollars and the defendant is entitled to a reduction in the bond. The bond is therefore reduced to the sum of $359,353,41.
The plaintiff is also entitled to a prejudgment remedy to secure the sum of $155,711.96 with respect to the loss of profit on 17 units which were partially completed at the time of termination plus interest in the amount of $38,927.99. Accordingly, the plaintiff is entitled to a prejudgment remedy as to Salce Associates only to secure the sum of $194,639.95 in addition to the bond covering sums due under the mechanics lien.
Proceedings to enforce the prejudgment remedy are stayed for a period of two weeks following the filing hereof to permit the filing of a bond to secure the sums under the prejudgment remedy.
RUSH, J.